NORBECK & NICHOLSON COMPANY, Respondent, v.
NIELSON, Appellant.

(164 N. W. 1033.)

(File No. 4190. Opinion filed November 12, 1917.)

1. **Contracts—Well Digging Contract—Part Payment in Horses—Split Hoof, Patent Defect, Immateriality of—Wire Cut, Whether Constituting Notice of Split Hoof?—Sufficiency of Evidence.**

In a suit to recover contract price of sinking of an artesian well by plaintiffs for defendant, plaintiffs having agreed to accept in part payment a team of horses "sound except one has wire mark on right front foot," **held,** that a finding by trial court that the team of horses tendered by defendant in part payment was unsound, in that there was not only a wire mark upon one foot of one horse but that he also suffered from a split hoof and was lame by reason thereof, was sustained by the evidence; that, defendant's contention being that the defective hoof was a patent defect and that plaintiff examined the team at the time, while plaintiffs' contention was that the hoof was covered with mud and the defect a latent one, **held,** further, in absence of a finding as to whether the split hoof was a latent or patent defect, the question presented is, was knowledge of a wire cut on the foot notice of the split hoof? That, there being evidence that the cut occurred two years before, and that the split hoof occurred four months before, time of contract, and that the cut had healed before the hoof split, a veterinary's testimony being that the crack was caused by wire cut, and that split hoofs come from many causes, and that there were two defects—the wire cut and the split hoof, **held,** further, that the finding was sustained by the evidence.

2. **Sales—Horses in Part Payment of Price of Sinking Well, Whether a Present Sale of Horses?—Contract and Evidence Considered—Non-prejudicial Finding.**

Where, at time of execution of contract by plaintiffs with defendant for sinking of a well for defendant, a memorandum was executed by plaintiffs to defendant agreeing to accept a team of horses at an agreed price in part payment for the well, horses "to be sound except one has wire cut on right front foot," the well having been constructed according to contract and the horses together with balance of purchase money having been tendered plaintiff after completion of well, **held,** that the transaction did not contemplate a present sale of the team, it being a transfer thereof to defendant at time performance was due on plaintiff's part; that if at such time the team was not sound except for the wire cut, plaintiffs were not

bound to accept it in part payment; that while a finding declaring the memorandum was a subsequent agreement was erroneous, it was not prejudicial to defendant.

3. **Trials—Trial to Court—Conclusions of Law, Attack of for Insufficiency of Evidence, Untenability of.**

In trials by court, conclusions of law are supposed to be based upon findings of fact, and cannot be attacked upon ground that the evidence is insufficient to support them; and Supreme Court can only look to findings to determine whether conclusions are correct.

Appeal from Circuit Court, Spink County. Hon. ALVA E. TAYLOR, Judge.

Action by Norbeck & Nickolson Company, a corporation, against J. P. Nielsen, to recover contract price for sinking an artesian well by plaintiff for defendant. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

*Morris & Moriarty,* for Appellant.
*Sterling & Clark,* for Respondent.

GATES, P. J.  The plaintiff corporation entered into a written contract with defendant on September 6, 1915, to construct an artesian well on defendant's premises for the sum of $550. At the time of the execution of the contract the following memorandum was executed by plaintiff and delivered to defendant:

"Redfield, S. D., Sept. 6th, '15.

"We argree to take one team bay geldings aged 4, weighing about 1,150 each and sound except one has wire mark on right front foot. One named 'Coats' (lt. bay) and one named 'Perch' (drk. bay), allowing Nielsen ($300) three hundred dollars for same on contract for artesian well of even date.

"Norbeck & Nicholson Co.,
"By R. J. Hutchings."

The well was constructed according to contract, and after the completion thereof defendant offered the team of horses and $250 in money to plaintiff, but plaintiff refused to accept the team. Thereupon this action was begun for the recovery of the contract price. From a judgment in favor of the plaintiff, and an order denying a new trial, defendant appeals.

The argument on appeal centers around the sufficiency of the evidence to sustain the ninth and tenth findings of fact, which are as follows:

"9. That subsequent to the execution and delivery of the written contract for the construction of said artesian well, and payment therefor the sum of $550, plaintiff and the defendant J. P. Nielsen entered into negotiations for the taking of a team of horses in part payment of the sum of $300; that the plaintiff agreed to accept a team of horses from the defendant J. P. Nielsen at the agreed price of $300 and on the representation that said team was sound except for a wire mark on one foot of the one of said team.

"10. That after the completion of said artesian well, the defendant J. P. Nielsen tendered a team as to plaintiff in part payment ,but said team was not sound in that there was not only a wire mark upon one foot of one of the horses, but that said horse also suffered from a split hoof, and was lame by reason thereof, and that said hoof was incurable, and that said animal could not be used except by keeping a shoe upon the injured hoof, and that even with the keeping of a shoe upon the injured hoof, the animal would go lame if worked upon anything other than soft ground."

[1] Appellant argues that there was a present sale of the horses to respondent on the date of the contract; that the defective split hoof was a patent defect which was clearly visible at the time of the examination of the horses by plaintiff; and that, having examined the team at that time, the rule of caveat emptor applied. On the other hand, respondent argues that the evidence tends to show that the defective hoof was covered with mud and manure at the time of the examination, and that the defect was therefore a latent defect, and that appellant, being aware of the split hoof, was in duty bound to apprise respondent thereof. These arguments are not pertinent to appellant's assignment of error. His specification of the insufficiency of the evidence to sustain the tenth finding was as follows:

"In that the evidence shows that the split hoof referred to in said finding was a part of the wire mark upon the hoof of the horse referred to in said finding, that the evidence shows that the plaintiff executed the written contract with defendant Nielsen

with due notice that the wire mark referred to in the written contract was an unsoundness, and that any defect shown to exist in said horse is shown by the evidence to be direct result of said wire mark."

No finding was made as to whether the split hoof was a latent or patent defect. In other words, the question presented by this assignment is: Was knowledge of a wire cut on the foot notice of the split hoof? Defendant testified that the wire cut was made two years before, and the split in the hoof occurred four months before the time of the contract, and that the wire cut had healed long before the hoof split. A veterinary surgeon testified that the crack in the hoof was caused by a wire cut which went through the coronary band; that split hoofs come from many different causes; that a wire cut upon the foot would not necessarily cause a split hoof; that if the wire cut did not come in contact with the coronal band it would not have any tendency to cause a split hoof; that there were two distinct defects in this horse—the wire cut and the split hoof.

[2, ] We think it entirely clear that finding 10 was sustained by the evidence, and that appellant's assignment of error is entirely without merit. Moreover, we do not think the transaction between the parties contemplated a present sale of the team. It contemplated a transfer of the team to respondent at the time performance was due on appellant's part, and if at such time the team was not sound except for the wire cut, respondent was not obliged to accept it in part payment of the contract.

We agree with appellant that the ninth finding is erroneous in so far as it declares that the memorandum was a subsequent agreement. It was as much a part of the principal agreement as though incorporated therein instead of being written upon a separate sheet of paper, but such finding was in no way prejudicial to appellant.

[3] Appellant further urges that the court erred in making its conclusion of law that plaintiff was entitled to payment for the full amount, because he claims the evidence shows that plaintiff agreed to accept the team with notice of the defects. In trials by the court conclusions of law are supposed to be based upon findings of fact. The conclusions cannot be attacked upon the ground that the evidence is insufficient to support them. This

court can only look to the findings to determine whether the conclusions are correct. In this case the findings amply support the conclusions.

Finding no error in the record, the judgment and order appealed from are affirmed.